UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMANDA JONES,

                                                          **REPORT AND**
                                                          **RECOMMENDATION**
                    Plaintiff,

                                                          11-CV-0999
                                                          (NAM/VEB)
          V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security[1],

                    Defendant.

_____


# I. INTRODUCTION

In November of 2009, Plaintiff Amanda Jones applied for supplemental security

income ("SSI") benefits under the Social Security Act.  Plaintiff alleges that she has been

unable to work since December of 1989 due to a learning disability. The Commissioner of

Social Security denied Plaintiff's application.

Plaintiff, by and through her attorneys, Olinsky Law Group, Michael J. Telfer, Esq.,

of counsel, commenced this action seeking judicial review of the Commissioner's decision

pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case

to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A)

and (B) on January 3, 2013. (Docket No. 19).

_____

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner.
The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this
matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure .

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits on November 4, 2009, alleging disability beginning on December 19, 1989. (T at 20, 79-82, 92).[2]  The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on November 24, 2010, in Syracuse, New York before ALJ Jose Ramos. (T at 29). Plaintiff appeared *pro se* and testified. (T at 35-49).

On January 24, 2011, ALJ Ramos issued a written decision finding that Plaintiff was not disabled and was therefore not entitled to benefits. (T at 17-29).  The ALJ's decision became the Commissioner's final decision on July 6, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

Plaintiff, through counsel, timely commenced this action on August 22, 2011. (Docket No. 1).  The Commissioner interposed an Answer on March 16, 2012. (Docket No. 9).  Plaintiff filed a supporting Brief on June 8, 2012. (Docket No. 15).  The Commissioner filed a Brief in opposition on July 20, 2012. (Docket No. 16).  With leave of the Court, Plaintiff filed a Reply Brief on July 31, 2012. (Docket No. 18).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 10).

accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for further proceedings.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

   **1.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 4, 2009, the application date.  The ALJ concluded that Plaintiff had an intellectual impairment, which caused significant limitations in Plaintiff's ability to perform basic work activities and was therefore a "severe" impairment under the Social Security Act. (T at 22).

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 22-24).  The ALJ concluded that

---

the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was limited to simple, unskilled work. (T at 24-26).

The ALJ found that Plaintiff had no past relevant work. (T at 26). Considering Plaintiff's age (19 years old on the application date), education (high school), work experience (no past relevant work), and RFC (no exertional limitations, limited to simple, unskilled work), the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T at 26-27).

Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act between the application date (November 4, 2009) and the date of his decision (January 14, 2011) and was not entitled to benefits. (T at 27). As noted above, the ALJ's decision became the Commissioner's final decision on July 6, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

### 2. Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed. She offers four (4) principal arguments in support of this position. First, Plaintiff contends that the ALJ failed to properly develop the record. Second, Plaintiff argues that the ALJ's residual functional capacity finding is not supported by substantial evidence. Third, Plaintiff challenges the ALJ's credibility determination. Fourth, Plaintiff contends that the ALJ's step five analysis was flawed. This Court will examine each argument in turn.

### a. Development of the Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v.

Chater, 77 F.3d 41, 47 (2d Cir.1996) (citing Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir.1982)). This duty is heightened if the claimant appears *pro se*. See Devora v. Barnhart, 205 F. Supp.2d 164, 172 (S.D.N.Y.2002) (citing Cullinane v. Secretary of Dep't of Health and Human Servs., 728 F.2d 137, 139 (2d Cir.1984)).

The Second Circuit has held that the Commissioner must "adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered" and by "scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts." Moran v. Astrue, 569 F.3d 108, 113 (2d Cir. 2009). (alterations original, citations omitted)). "And when a claimant appears *pro se* and is otherwise impaired, we must 'make a searching investigation of the record to make certain that the claimant's rights have been adequately protected.'" Id.

In the present case, Plaintiff, who appeared *pro se* at the administrative hearing, argues that the ALJ did not properly develop the record with regard to her asthma, knee problems, and obesity. In particular, Plaintiff contends that the ALJ should have obtained records from Plaintiff's treating providers and/or ordered a physical consultative examination.

During the hearing, Plaintiff testified that she is 5' 9" tall and weighs approximately 270 pounds. (T at 35). She further testified that she "have [*sic*] a knee problems, . . . where my knees – I have problems walking far distance." (T at 36). She explained that she was "going to see a doctor" from the Fulton Health Center about her knee, but had not seen the doctor yet. (T at 36-37). Plaintiff also stated that he had asthma, which she treated with an Albuterol inhaler every three to four hours. (T at 46). She has difficulty breathing when he ascends stairs or engages in sustained walking. (T at 46).

The ALJ referenced this testimony in his decision. (T at 24). However, he noted that Plaintiff had not sought treatment for her knee pain as of the date of the hearing. (T at 24). The ALJ also cited the lack of treatment records regarding hospitalizations or medications for the treatment of Plaintiff's asthma. (T at 24). Given the absence of evidence from an "acceptable medical source," the ALJ determined that Plaintiff's knee problems and asthma were "non-medically determinable impairments." (T at 24).

With regard to obesity, the ALJ found "no evidence in the record of corresponding functional limitations as a result of the obesity alone or in combination with other impairments." (T at 24). As such, the ALJ concluded that Plaintiff's obesity was a "non-medically determinable impairment." (T at 24).

The ALJ did not satisfy his duty to develop the record and a remand should be ordered. As noted above, the ALJ was required to "*seek out* evidence on behalf of both the Commissioner and the plaintiff." Moran, 569 F. 3d at 113 (quoting Lamay v. Astrue, 562 F. 3d 503, 508-09 (2d Cir. 2009))(emphasis added). To satisfy the duty to develop the record, the ALJ was obliged to obtain Plaintiff's "complete medical history" and make "every reasonable effort" to help obtain the necessary medical records. 20 C.F.R. § 404.1512(d).

This general obligation is heightened where, as here, the claimant was proceeding *pro se* during the administrative process. See Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990). Indeed, in cases involving *pro se* claimants, the Second Circuit requires a "searching investigation," with the ALJ "scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts." Moran, 569 F.3d at 113.

In this case, the ALJ recognized this duty and made the following promise to the *pro se* claimant at the administrative hearing: "I'll ask you some questions to try to help me

8

understand the case and if there's – it's necessary to send out for some records or whatever, I'll do that, okay?" (T at 33-34).

Further, the ALJ was clearly on notice that Plaintiff was obese, alleged knee pain, and suffered from asthma. To wit, Plaintiff testified that she was 5' 9" tall and weighed approximately 270 pounds. (T at 35). This translates to a Body Mass Index ("BMI") of 39.9, which is well above the threshold of 30 for being considered obese. See SSR 02-1p. Plaintiff testified that she had knee pain, aggravated by walking long distances, and that she was seeking medical attention for it. (T at 36). The ALJ asked for the name of the doctor Plaintiff was going to see regarding her knee pain and she advised that her doctor worked at the Fulton Health Center. (T at 36-37). Notwithstanding some apparently inconsistent prior statements concerning her symptoms (discussed below), Plaintiff testified that her asthma caused difficulty breathing and that she treated with an Albuterol inhaler every three to four hours. (T at 46). Albuterol is a prescription medication.[5]

Rather than conduct a "searching investigation" to obtain any and all "relevant facts" about Plaintiff's impairments, the ALJ simply noted that the medical record did not contain any treatment records or opinions from acceptable medical sources regarding these impairments, and then dismissed them as "non-medically determinable impairments." (T at 24). This was plainly insufficient to satisfy his duty to develop the record, particularly where, as here, the claimant was proceeding *pro se.*

The Commissioner defends the ALJ's decision by noting that Plaintiff's allegations of knee pain were presented for the first time at the administrative hearing and that she had

_____

[5]See Definition of Albuterol Inhalation, at http://www.drugs.com/albuterol.html (last accessed January 27, 2013).

not previously identified asthma or obesity as a disabling impairment.

It is true that Plaintiff did not claim that any physical impairments limited her ability to work on the forms completed in connection with her application for benefits. (T at 92, 155). Plaintiff reported that she had asthma, but stated that she had not required any recent medical care or treatment and indicated that her condition did not significantly limit her daily functioning. (T at 150). In January of 2010, Plaintiff told Dr. Dennis Noia, a psychiatric consultative examiner, that she had asthma, but did not report that she was taking any medications. (T at 161). Plaintiff advised Dr. Noia that she was unable to work because of "learning problems," but did not reference any physical limitations. (T at 160). During the administrative hearing, although Plaintiff testified to knee pain, she also reported that she routinely walked as a form of transportation and leisure. (T at 36-37, 42, 44).

However, in light of the Second Circuit authority defining the duty to develop the record and, in particular, the Circuit's admonitions regarding the heightened duty imposed where, as here, the claimant is *pro se*, this Court finds the Commissioner's argument unpersuasive.

First, the Commissioner essentially adopts a "waiver" theory, wherein Plaintiff waived the right to further development of the record by not adequately alleging physical impairments during the course of the administrative proceedings. This waiver theory is clearly at oodds with the case law establishing that benefits proceedings are non-adversarial in nature and holding that the ALJ must affirmatively and, indeed, vigorously "search out" evidence in support of the claimant's case. See Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must himself affirmatively develop the record' in light of 'the essentially non-adversarial nature

10

of a benefits proceeding.'") (citations omitted); <u>Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir.1998) (holding that where the "clinical findings [are] inadequate, it [is] the ALJ's duty to seek additional information from [the treating physician] sua sponte"); <u>Cruz</u>, 912 F.2d at 11 ("Although we do not at all suggest that the ALJ was indifferent to Cruz's condition, it is our view that he did not adequately fulfill his "affirmative obligation to assist this pro se claimant in developing [his] case.")(citations omitted).

Second, given the Commissioner's finding that Plaintiff had a severe intellectual impairment (T at 22), it was inappropriate to rely exclusively on her self-reporting with respect to the nature and extent of her limitations. Dr. Noia, the consultative examiner, (whose opinion the ALJ afforded "significant weight") found Plaintiff's intellectual functioning to be "in the deficient range," with her "general fund of information" appearing to be "limited." (T at 162). Thus, it is reasonable to suspect that Plaintiff might not be a perfectly reliable reporter and/or have unfailing insight into her limitations.

Thus, this case should be remanded for further development of the record regarding Plaintiff's physical impairments. The Commissioner should seek out records from appropriate treating providers with regard to the nature, extent, and limiting effect, if any, of Plaintiff's knee pain, obesity, and asthma. The Commissioner should also give serious consideration to ordering a physical consultative examination. <u>See</u> 20 C.F.R. § 416.919a (b).

**b.  RFC**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was limited to simple unskilled work. (T at 25). For the reasons outlined above, the ALJ's conclusion that Plaintiff had no exterional limitations should be revisited on remand after further development of the record concerning Plaintiff's knee pain, asthma, and obesity. However, his findings with respect to Plaintiff's ability to perform the basic mental demands of unskilled work are supported by substantial evidence and should be sustained.

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. "A substantial loss of ability to meet

12

any of these basic work-related activities would severely limit the potential occupational base." Id.

Dr. Dennis Noia, who performed a psychiatric consultative examination in January of 2010, found that Plaintiff's intelligence was in the "deficient" range and that her general fund of information was "limited." (T at 162). However, Dr. Noia opined that Plaintiff nevertheless appeared capable of understanding and following simple instructions and directions; performing simple tasks with supervision and independently; and maintaining attention and concentration for tasks. (T at 162). He further concluded that Plaintiff could regularly attend to a routine and maintain a schedule, learn simple new tasks, make simple appropriate decisions, interact moderately well with others, and deal with stress. (T at 162-63).

Dr. Kamin, a non-examining State Agency review consultant, opined that Plaintiff was not significantly limited with regard to her ability to remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others with being distracted by them; and make simple work-related decisions. (T at 178).

Dr. Kamin also found no significant limitations in terms of Plaintiff's ability to ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and adhere to

basic standards of neatness and cleanliness. (T at 179).

Dr. Kamin assessed moderate limitations with regard to Plaintiff's ability to understand and remember detailed instructions; carry out detailed instructions; interact appropriately with the general public; and respond appropriate to changes in the work setting. (T at 178-79).

The ALJ afforded Dr. Noia's opinion "significant weight" and referenced Dr. Kamin's assessment in support of his decision (albeit without stating the weight he afforded to it). (T at 26). The ALJ also noted that Plaintiff's activities of daily living included volunteer work, socializing with friends, performing household cleaning, and using public transportation. (T at 26).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. <u>See</u> 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); <u>see also</u> <u>Leach ex. Rel. Murray v. Barnhart</u>, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). In the instant case, this Court finds that the ALJ's conclusion that Plaintiff retained the ability to perform the basic mental demands of unskilled work was supported by substantial evidence and this aspect of the ALJ's RFC determination should be sustained. However, as discussed above, the portion of the ALJ's RFC determination related to Plaintiff's exertional limitations should be revisited on remand after further development of the record.

### c.    Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: She has knee pain that is aggravated by walking long distances. (T at 36). She has difficulty handling money. (T at 40). She uses public transportation and does not drive. (T at 42). She generally needs help shopping. (T at 43). She uses an Albuterol inhaler every three to four hours to treat her asthma, which is aggravated by walking or ascending stairs. (T at 46). In her application for benefits, Plaintiff indicated that she had a learning disability and difficulty with stress. (T at 92).

The ALJ concluded that Plaintiff's mental determinable impairment could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effect of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (T at 25).

Here again, the ALJ's failure to properly develop the record is problematic. Plaintiff's testimony concerning her physical impairments was discounted because there was no evidence in the record to support it. (T at 25-26). However, before discounting Plaintiff's credibility on this basis, the ALJ was obliged, under the applicable law and regulations, to seek out such evidence and ensure that he had a "complete medical record." As such, Plaintiff's credibility should be revisited on remand after further development of the record.

### d.    Step Five Analysis

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the

17

> sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If the claimant has nonexertional impairments, the ALJ must determine whether those impairments "significantly" diminish the claimant's work capacity beyond that caused by his or her exertional limitations. Id. A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional

capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching his disability determination. Specifically, the ALJ concluded that a finding of "not disabled" was appropriate under the framework of Medical-Vocational Rule 204.00 based upon Plaintiff's age, education, work experience, and residual functional capacity. (T at 27). However, as discussed above, the ALJ's conclusion that Plaintiff retained the RFC to perform work at any exertional level was compromised by his failure to adequately develop the record. If Plaintiff's ability to perform the exertional demands of basic work activity is compromised, that fact, combined with the ALJ's (adequately supported) conclusion that Plaintiff is limited to simple, unskilled work, may diminish Plaintiff's work capacity and require consultation with a vocational expert. As such, the step five analysis will need to be reviewed on remand after further development of the record and reconsideration of Plaintiff's RFC.

**3.     Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, and that this case be remanded for further administrative proceedings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


Dated:   March 11, 2013

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 11, 2013

_____

Victor E. Bianchini
United States Magistrate Judge

21